James Dalton Bell, 26906-086

USP Tucson, PO Box 24550

Tucson AZ  85734



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AT SAN FRANCISCO

ATTN: CHIEF JUDGE WALKER

CV **08**        **1097**

James Dalton Bell,                Habeas Corpus Under 28 U.S.C.

      Notificant/Petitioner      2241 for all pending and past

                             criminal cases and prisoners

v.

United States of America, Department of Justice,

Federal Bureau of Prisons, United States Attorney General

        Respondent

"GREAT WRIT" HABEAS CORPUS UNDER 28 U.S.C. 2241.

NOTIFICATION OF LACK OF CRIMINAL JURISDICTION TO ALL DISTRICT

COURT JUDGES IN THIS COURT.

(See MEMORANDUM OF LAW AND FACT REGARDING CLAIM OF VOIDNESS OF

DEFENDANTS' CONVICTIONS, post.)

      COMES NOW Notificant/Petitioner James Dalton Bell, sui

juris (pro se), a federal prisoner located at USP Tucson, Arizona. Bell hereby files this 28 U.S.C. 2241 "Great Writ" habeas corpus action on behalf of ALL current and past federal prisoners (since 1948) whose cases originated in, or who are located within the jurisdiction of, this judicial court.

Additionally, Bell files a F.R.Civ.P. 60(b)(4) ("judgment is void") motion as "Next Friend" for persons no longer incarcerated, thus bringing an "error coram nobis" action. See U.S. v. Morgan, (Supreme Court, 1954).

According to 28 U.S.C. 2242, the habeas petition must be signed by the detainee or a person acting on his behalf. Petitioner Bell is acting on behalf of all detainees in this court's jurisdiction, or whose cases originated there, as the law allows him to do. Bell's signature is below.

According to 28 U.S.C. 2243, the judge must either immediately GRANT the writ or "forthwith" order the Respondent to Answer within three (3) days, or a maximum of 20 days for good cause.

THIS FILING NOTIFIES ALL DISTRICT COURT JUDGES OF
JURISDICTIONAL DEFECTS IN ALL PENDING AND PAST CRIMINAL CASES

In addition to the obligation placed on the judge who considers this petition, at the moment of the arrival of this petition/notification to this appeals court, EACH judge in this appeals court became constructively aware of the defect to his criminal jurisdiction in each pending and each past criminal case, and to the defective criminal jurisdiction in each case of each prisoner originating in or currently located in this appeals circuit.

Merely as a product of the arrival of this filing, each judge became constructively aware of his obligation to, sua sponte, raise a challenge in each pending and past criminal case and allow the defendant(s) and his attorney to research, brief, and argue the matter. See Steel Co. v. Citizens For a Better Env. (Supreme Court 1998).

These judges are obligated to continue the criminal case with a sua sponte (on the judge's own motion) Federal Rule of Civil Procedure 60(b)(4) ("judgment is void") motion. Because such a motion is the continuation of a criminal case, and is not the initiation of a new case under a new (civil) docket, see United States v. Morgan (Supreme Court, 1954), each prisoner and ex-prisoner is entitled to the appointment of a counsel under 18 U.S.C. 3006A(c). ("at all stages")

THE PETITION/NOTIFICATION

Bell relates and asserts that numerous federal criminal statutes supposedly existing since 1948 in Title 18 United States Code did not and do not exist in that Title, due to a defect in the passage of a Congressional bill, H.R. 3190, in 1948. In addition, the same defective passage resulted in the non-existence of statute 18 U.S.C. 3231, which purportedly gives federal courts jurisdiction over all federal crimes in each Title, not merely Title 18. The non-existence of 18 U.S.C. 3231 means that federal courts do not possess general criminal jurisdiction over ANY federal criminal statute.

The law recodifying Title 18, P.L.80-772, was not legally enacted because the bill H.R. 3190 (1948) was not identically passed by both the House and the Senate, as is

required by the U.S. Constitution. Clinton v. City of New York, 524 US 417, 448, 141 L.Ed.2d 393, 420 (1998). Thus, "18 U.S.C. 3231" does not exist as a valid statute: the district courts nor the appeals courts had no subject-matter jurisdiction over federal criminal statutes.

In addition, due to the non-passage of H.R. 3190 in 1948, numerous jurisdictional, definitional, procedural, and limitation statutes ostensibly in Title 18 do not exist and have no existed since 1948, making all prosecutions and convictions since 1948 defective.

See "MEMORANDUM OF LAW AND FACT REGARDING CLAIM OF VOIDNESS OF DEFENDANTS' CONVICTIONS", post.

BELL MUST ACT BY MEANS OF 28 U.S.C. 2241 and "NEXT FRIEND" 60(b)(4)

Bell can, and does, file this 2241 "Great Writ" petition, as 28 U.S.C. 2242 allows, on behalf of others, specifically all other federal prisoners. Bell must act as "Next Friend" in regards to F.R.Civ.P. 60(b)(4) motions to other prisoners because Bureau of Prisons policy prohibits Bell from communicating this argument to other federal prisoners in other federal institutions by telephone or mail or other means.

F.R.Civ.P. 60(b)(4) IS A PROPER FORM OF RELIEF

Until recently, both federal district and appellate courts were regularly misconstruing ("recharacterizing") filings under F.R.Civ.P. 60(b) as if they were filed under 28 U.S.C. 2255. Castro v. U.S., 540 US 375, 381, 157 L.Ed.2d 778,

786 (2003):

"Federal courts sometimes will ignore the legal label
that a pro se litigant attaches to a motion and recharacterize
the motion in order to place it within a different legal
category.  [...] They may do so in order to avoid an
unnecessary dismissal, e.g., [United States v. Tindle, 173
U.S. App. D.C. 77, 592 F.2d 689], at 692-693, [(D.C. Cir.
1975)], to avoid inappropriately stringent application of
formal labelling requirements, see Haines v. Kerner, 404 US
519, 520, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972) (per curiam), or
to create a better correspondence between the substance of a
pro se motion's claim and its underlying legal basis, see
Hughes v. Rowe, 449 US 5, 10, 66 L.Ed.2d 163, 101 S.Ct. 173
(1980) (per curiam); Andrews v. United States, 373 US 334, 10
L.Ed.2d 383, 83 S.Ct. (1963)."    (end quote from Castro)

Despite the positive "spin" of this claim, in reality
this recharacterization was often done to improperly invoke an
impediment or obstacle to the movant, for example the 28
U.S.C. 2255 time bar in order to deny relief, or to
manufacture some other obstruction, in order to harm and not
to help the unrepresented litigant.  This is in direct
opposition to both the letter and spirit of Haines v. Kerner,
404 US 519, 520 (1972):

"...the allegations of the pro se complaint, [...] we
hold to less stringent standards than formal pleadings drafted
by lawyers..."    (end quote from Haines)

Gonzalez v. Crosby, 545 US 524 534, 162 L.Ed.2d 480,
494 (2005) corrected this invidious practice stating:

"Rule 60(b) has an unquestionably valid role to play

in habeas cases.  The Rule is often used to relieve parties
from the effect of a default judgment mistakenly entered
against them, e.g., Klapprott, 335 US at 615, 93 L.Ed. 266, 69
S.Ct. 384 (opinion of Black, J.), a function as legitimate in
habeas cases as in run-of-the-mine civil cases.  The Rule also
preserves parties' opportunity to obtain vacatur of a judgment
THAT IS VOID FOR LACK OF SUBJECT-MATTER JURISDICTION - a
consideration just as valid in habeas cases AS IN ANY OTHER,
since the absence of jurisdiction altogether deprives a
federal court of the power to adjudicate the rights of the
parties.  Steel Co. v. Citizens For a Better Environment, 523
US 83, 94, 101, 140 L.Ed.2d 210, 118 S.Ct. 1003 (1998).  In
some instances, we may note, it is the State, not the habeas
petitioner, that seeks to Rule 60(b) to reopen a habeas
judgment granting the writ.  See, e.g., Ritter v. Smith, 811
F.2d 1398, 1400 (11th Cir. 1987)."   (end quote from Gonzalez
v. Crosby, emphasis by capitals added)

        As stated in Gonzalez by Justice Stevens, joined by
Souter, in dissent, 545 US at 539, 162 L.Ed.2d at 497:

        "The most significant aspect of today's decision is
the Court's UNANIMOUS rejection of the view that all
postjudgment motions under Federal Rule of Civil Procedure
60(b) except those alleging fraud under Rule 60(b)(3) should
be treated as second or successive habeas corpus petitions."
(emphasis by capitals added.)

        A F.R.Civ.P. 60(b)(4) motion ("judgment is void") is
an attack, not on the judgment on the merits, but instead on
the jurisdiction of the court to address those merits.  Such a
motion is a "'true' 60(b) motion", and is not a "second or

successive" 2255 filing within the meaning of Gonzalez v.
Crosby, 545 US 524, 534, 539, 162 L.Ed.2d 480, 494, 497
(2005).   Defendants were charged with crimes over which the
court had no jurisdiction, because bill H.R. 3190 didn't pass,
so P.L. 80-772 did not become law as was and is commonly
thought.   Therefore, the district court did not have subject
matter jurisdiction, and the judgment resulting is void.
Defendants are entitled to 2241 habeas and 60(b)(4) relief
from void judgments.

Gonzalez overruled cases such as U.S. v. Fair, 326
F.3d 1317, 1318 (11th Cir. 2003), which had stated:

"In United States v. Mosavi, 138 F.3d 1365 (11th Cir.
1998), we addressed the applicability of Rule 60(b) in the
context of a criminal case. [...] This Court stated, however,
that the Federal Rules of Civil Procedure limited their
application to CIVIL cases.   Consequently, we held that the
appropriate vehicle for challenging the forfeiture was
Mosavi's direct criminal appeal and his conviction and
sentence and that Rule 60(b) simply does not provide for
relief from judgment in a criminal case."

(emphasis by italics in original converted to
capitals; end of quote from Fair.)

The discovery that purported statute 18 U.S.C. 3231 is
invalid constitutes "newly discovered evidence which by due
diligence could not have been discovered in time to move for a
new trial under Rule 59", which can be addressed by Rule
60(b)(2).   If any reasonable factfinder had been informed that
these statutes were invalid, and there was no valid federal
court criminal jurisdiction over acts in violation of statutes

in Titles 8, 18, 21, 26, etc, he would not have found these
defendants guilty of the offense. Ordinarily, there is a 1-
year deadline after the judgment is entered, but in this case
Movee actively obstructed these defendants' and Petitioner
Bell's ability to learn of the invalidity of the statute 18
U.S.C. 3231. Consequently, this should qualify under Rule
60(b)(6), in addition to Rule 60(b)(4). Alternatively, this
qualifies as fraud on the court under Rule 60(b)6), because
the law was misrepresented by the government to make it appear
that these statutes, including 18 U.S.C. 3231, were valid.

Petitioner Bell claims for relief for each prisoner or
ex-prisoner under both 2241 habeas and Rule 60(b)(4) because
the basis for federal court criminal jurisdiction, 18 U.S.C.
3231, were invalid at both the district and appeals court
level.

COURT MUST NOTICE ERROR "AT ANY TIME": F.R.Cr.P. 12(b):

Failure of an indictment to allege a violation of a
valid criminal statute means it is legally insufficient.
According to Hughes v. Thompson, 415 US 1301, 1302, 39 L.Ed.2d
93, 95 (1974): "[u]nder the Federal Rules of Criminal
Procedure the question of the sufficiency of the indictment
'shall be noticed by the court at any time.' Rule 12(b)(2)".

See United States v. Ropp, 347 F.Supp.2d 831, 833
(Central District of California, 2004):

"[Rule 12] apparently permits a defendant to move to
quash an indictment for failure to state an offense. Ex Parte
Parks, 93 US 18, 20, 23 L.Ed. 787 (1876). Thus, if no statute
makes the alleged offense a crime, a defendant may challenge

that defect under Rule 12." (end quote from U.S. v. Ropp.)

Ex Parte Parks, 93 US 18, 23 L.Ed. 787, 787-788 (1876) held:

"Whether an act charged in an indictment is or is not a crime by the law which the court administers (in this case the statute law of the United States) is a question which has to be met at almost every stage of criminal proceedings; on motions to quash the indictment, on demurrers, on motions to arrest judgment, etc." (end quote from Parks.)

Therefore, it is mandatory for this court to take judicial notice of the fact that the statutes of which defendants were ostensibly convicted were legally non-existent, or the courts had no subject-matter jurisdiction over the crimes. 18 U.S.C. 3231 has not existed since 1948, or before.

RULE 60(b) (ERROR CORAM NOBIS) MOTION IS CONTINUATION OF A CRIMINAL CASE. NOT NEW CASE UNDER A NEW (CIVIL) DOCKET NUMBER.

U.S. v. Morgan, 346 US 502, 520, 98 L.Ed. 248, 261 (1954) held that a motion under Error Coram Nobis is a continuation of a criminal case:

"We therefore treat the record as absolutely presenting a motion in the nature of a writ of error coram nobis enabling the trial court to properly exercise its jurisdiction. Adams v. United States, 317 US 269, 272, 87 L.Ed. 268, 271, 63 S.Ct. 236, 143 ALR 435. (Note 4)." (end quote from U.S. v. Morgan)

Morgan, 98 L.Ed. at 271, note 4:

"Such a motion is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record the beginning of a separate civil proceeding. Kurtz v. Moffit, 115 US 487, 494, 29 L.Ed. 458, 459, 6 S.Ct. 148. While at common law the writ of error coram nobis was issued out of chancery like other writs, Stephens, Principles of Pleading 3d Am. Ed. 142, the procedure by motion in the case is now the accepted American practice. Pickett's Heirs v. Legerwood, (U.S.) 7 Pet 144, 147, 8 L.Ed. 638, 639; Wetmore v. Karrick, 205 US 141, 151, 51 L.Ed. 745, 748, 27 S.Ct. 434; United States v. Mayer, 235 US 55, 67, 59 L.Ed. 129, 135, 35 S.Ct. 16. As it is such a step, we do not think that Rule 60(b), Fed Rules of Civ. Proc., expressly abolishing the writ of error coram nobis in civil cases, applies." (end quote from Note 4, U.S. v. Morgan.)

MOTION TO APPOINT COUNSEL: F.R.Cr.P. 44(a), 18 U.S.C. 3006A(c)

Felony defendants have a right to appointment of counsel. Powell v. Alabama, 287 US 45, 77 L.Ed. 158 (1932); Gideon v. Wainwright, 372 US 335, 9 L.Ed.2d 799 (1963); Anders v. California, 386 US 738, 18 L.Ed.2d 493 (1967); Faretta v. California, 422 US 806, 45 L.Ed.2d 562 (1974); Scott v. Illinois, 440 US 367, 59 L.Ed.2d 383 (1979); Davis v. United States, 512 US 452, 129 L.Ed.2d 362 (1994).

18 U.S.C. 3006A(c) states, in relevant part:

"Duration and substitution of appointments. A defendant for whom counsel is appointed shall be represented AT EVERY STAGE OF THE PROCEEDINGS from his initial appearance

before the United States Magistrate [United States Magistrate judge] or the court through appeal, INCLUDING ANCILLARY MATTERS APPROPRIATE TO THE PROCEEDINGS." (emphasis by capitals supplied.)

18 U.S.C. 3006A was enacted after U.S. v. Morgan, supra, which had held that an Error Coram Nobis (Rule 60(b) proceeding is a "continuation of a criminal case." Morgan, 98 L.Ed. at 271, Note 4.

In Lorillard v. Pons, 434 US 575, 581, 55 L.Ed.2d 40, 46 (1977):

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change, see Albemarle Paper Co. v. Moody, 422 US 405, 414, n.8, 45 L.Ed.2d 280 (1975)." (end quote from Lorillard v. Pons)

In the case of 18 U.S.C. 3006A, after its passage in 1964 it was subsequently amended in 1968, 1970, 1974, 1982, 1984, 1986, 1987, 1988, 1996, 1997, 1999, 2000, and 2004. These amendments did not change the principle, that an attorney is appointed to serve "at all stages" of a criminal case, in any relevant or significant way. By the principle of Albemarle v. Moody, supra, Congress is presumed to adopt the judicial interpretation of U.S. v. Morgan, supra.

And 18 U.S.C. 3006A(c), as of its initial enactment by Congress in 1964, guarantees an attorney "at all stages" of a criminal proceeding. Hence, Congress must have intended that the guarantee in 3006A of an appointed counsel "at all stages of a criminal case" applies to Rule 60(b) proceedings.

Analogously, in Whitfield v. United States, 543 US

200, 216, 160 L.Ed.2d 611, 615 (2005):

        "Congress is presumed to have had knowledge of Nash
[v. United States, 229 US 373, 57 L.Ed. 1232 (1913)] and
Singer [v. United States, 323 US 338, 89 L.Ed. 285 (1945)]
when it enacted [18 U.S.C.] 1956(h)."  (end quote from
Whitfield)

        Likewise, Congress can be presumed to have been aware
of U.S. v. Morgan, which held that an error coram nobis
proceeding is a continuation of a criminal case, and is not a
collateral attack under a civil docket number, when it voted
to grant a statutory right to an appointed counsel "at all
stages" of a criminal proceeding.  Therefore, defendants'
right to an appointed attorney, for purposes of preparing and
litigating that necessary motion, is guaranteed by 18 U.S.C.
3006A(c), since it is the continuation of a criminal case
and/or an "ancillary proceeding" under 3006A(c).  See United
States v. Martinson, 809 F.2d 1364 (9th Cir. 1987):

        "However, on this record it is irrelevant whether
Martinson's motion for return of the property was technically
filed as a criminal or civil matter.  The public defender,
once validly appointed, was clearly justified in continuing
his representation of Martinson.  The motion was sufficiently
related to the 1977 criminal case as to be consider an
"ancillary" proceeding for purposes of 18 U.S.C. 3006A(c)."
    (end quote from U.S. v. Martinson)

        A Rule 60(b)(4) motion seeking to overturn a
conviction for voidness is at least as related to a criminal
case as the return of the property in Martinson, supra.

        And, it is quite clear that if the defendants had

known of the jurisdictional problem at that time, they could
have raised the issue of the invalidity of 18 U.S.C. 3231
(1948) at the time of their indictments, pre-trial, trial,
post-trial, or on direct appeal, and they would have been
entitled to the services of an appointed attorney to do this
work. The fact that time has passed doesn't make this right
less real. A Rule 60(b) motion is not a "collateral attack",
and is not a "habeas proceeding". A Rule 60(b) motion, as
clearly stated in U.S. v. Morgan, supra, is a continuation of
a criminal proceeding, to which defendants have the right to
an attorney "at all stages" under 18 U.S.C. 3006A(c).

FACTS NOT DISCOVERABLE WITH "DUE DILIGENCE"

If this filing were construed under 28 U.S.C. 2255, it
would be improper to apply the 2255 time bar, because of the
exception of 2255(4):

"The limitation period shall run from the latest of --
[...] (4) the date on which the facts supporting the claim or
claims presented could have been discovered through the
exercise of due diligence."

The specific facts on which this claim is founded are
located in the pages of the 1947-48 Congressional Record.
Only there would one discover that the House of
Representatives had no quorum on May 12, 1947, that they
merely "concurred" with the amendments" to bill H.R. 3190, yet
did not vote on the full, as-amended bill. These facts are
not present in the various books proferred in the law
libraries in the prisons of the federal Bureau of Prisons, to
Petitioner Bell's knowledge and belief. To the contrary,

these facts are contradicted by false assertions in law books, such as:

"18 USCS. 1": (Falsely asserts that Title 18 was recod ified, and includes a long table of correspondence between old and new statute numbers: "TABLE OF DISPOSITIONS [/p/]. This table indicates where former Title 18 sections were incorporated in Title 18, as revised by Act June 25, 1948, ch 645, 62 Stat, 683, or in other Code provisions, or, if omitted, the reason therefore:");

"18 USCS. 3231": (Falsely states that "This section was formed by combining former 18 U.S.C. 546 and 547 with former 12 U.S.C. 588d, with no change of substance.");

Any person (especially a pro-se prisoner) depending on these ostensibly-authoritative law books for accurate information would be dissuaded from proceeding further, and would never find the error.

Federal prison libraries don't stock the Congressional Record. The necessary facts are also not accessible through the LEXIS-law computer system that is being installed in some new U.S. penitentiaries, displacing the books. Not shelving the voluminous Congressional Record may have seemed understandable back in the era of paper: Petitioner Bell roughly estimates that the full set of Congressional Record books would require about the same shelf space as 4000 books the size of a F.3d (Federal Reporter, Third Edition) book. However, measured now as computer hard-disk data it should amount to about 35 gigabytes, which is only 3.5% of the storage capacity of the largest computer hard drive commercially available. (which is 1 terabyte, or 1000

gigabytes, or 1,000,000 megabytes.  Today, a 50-gigabyte drive
is considered small).

Unfortunately, the federal government, the BOP, and
therefore the prison library staff have an uncompromising and
hostile attitude towards obtaining legal material beyond which
the library carried in the 1900's.  This fact coupled with the
passing of the AEDPA has greatly discouraged prisoners from
filing any kind of appeals, precisely as intended.  Most
federal prison libraries, the ones with books, carry Supreme
Court decisions dating back to 1960.  Their earliest book is
typically 4 L.Ed.2d.  They have no L.Ed.'s.  Their F.2d's are
similarly limited ... dating back to around 267 F.2d (1959).
Thus, omitted is the critical first 10 years of legal
precedent after the presumptive passage of H.R. 3190/P.L. 80-
772/Title 18.

This, and the complete lack of the Congressional
Record, completely blocks the ability of prisoners to detect
(or independently confirm) the existence of faults in the
passage of bills in Congress that initiate or amend federal
criminal (or civil) laws.  It would be virtually impossible
for a pro-se prisoner to detect these kinds of legal defects
in his conviction:  Prisoners simply cannot find them by the
exercise of "due diligence", the expressed standard for the
application of 28 U.S.C. 2255(4).

Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004)
repeated that Circuit's principle:

"We have previously noted that a due diligence inquiry
should take into account that prisoners are limited by their
physical confinement.  Montenegro v. United States, 248 F.3d

585, 592 (7th Cir. 2001), rev'd on other grounds, Ashley v.
United States, 266 F.3d 671 (7th Cir. 2001); see also
Easterwood v. Champion, 213 F.3d 1321, 1323 (10th Cir. 2000)
(finding a prisoner's access to published legal materials is
established once the prison library receives the materials,
not when the materials were published.)" (end quote from
Moore v. Knight)

As concurred by Judge Tashima in Whalem/Hunt v. Early,
233 F.3d 1146, at 1148:

"Neither the 'impediment' standard contained in the
statute, 28 U.S.C. 2244(d)(1)(B), nor this court's equitable
tolling standard, see Calderon v. United States Dist. Court
(Beeler), 128 F.3d 1283, 1288-89 (9th Cir. 1997), overruled
on other grounds, Calderon v. United States Dist. Court
(Kelly), 163 F.3d 530, 540 (9th Cir. 1998) (en banc), cert.
denied, 526 US 1060 [...], requires that petitioner prove an
inability to "research and identify [his] claims," as the
district court held, in order to rely upon barriers to
researching legal issues as the basis for delaying the start
of, or tolling, the statute of limitations. A prisoner acting
pro se can be prevented from discovering the most basic
procedural rules essential to avoid being summarily thrown out
of court, even if the claims alleged in the petition are
meritorious, well-drafted, and supported by every pertinent
citation entitling him to relief on the merits. Cf. Rand v.
Rowland, 154 F.3d 952, 958 (9th Cir. 1998) (en banc), cert.
denied, 527 US 1035 [...] (1999) (noting handicaps faced by
prisoners acting pro se in complying with procedural
requirements). A petitioner's knowledge of the legal basis of

his claims is not the same as knowledge of the procedural
rules that must be complied with in order to get a hearing on
the merits." (end quote from Whalen/Hunt v. Early.)

Rand v. Rowland, 154 F.3d 952, 958 (1998), reciting a
whole litany of disadvantages of pro-se prisoners, stated:

"Pro se prisoners are also limited in their access to
legal materials. Jacobsen, 790 F.2d at 1364 n.4 (Citing Moore
v. Florida, 703 F.2d 516, 520 (11th Cir. 1983))." (end quote
from Rand v. Rowland.)


EVEN 100,000+ LAWYERS COULDN'T FIND IT

Perhaps Respondent will argue that despite the
obstruction by BOP to defendants' and Petitioner Bell's
discovery of the detect, they should have discovered it if
"due diligence" had been employed. That argument is nonsense:
Since 1948, it is likely that well over a million
prosecutions of violations of law under 18 U.S.C., 21 U.S.C.,
8 U.S.C., and 26 U.S.C. have occurred. The vast majority of
them have been professionally defended by trained attorneys at
the pre-trial, trial, and direct-appeal stages, which probably
amounts to over 100,000 different attorneys.

Those attorneys were and are ethically bound to
represent their clients zealously, identify any arguable flaws
in those charges, and they are ethically bound to engage in
"due diligence" of their own. Indeed, the standard of "due
diligence" for attorneys must be far higher than that of pro-
per unlettered defendants. See Haines v. Kerner, 404 US 519,
30 L.Ed.2d 652 (1972).

Those attorneys could have raised and argued the

invalidity of the recodification of 18 U.S.C. at the pre-
trial, post-trial, appeal, and collateral attack stages of
those cases, if they had known of the problem.  They would
have had a powerful motivation, and an ethical obligation, to
do so:  If valid, this would amount to a virtually automatic
"win".

If even a tiny fraction of those attorneys had noticed
the error and raised an objection to the 18 U.S.C.
recodification issue over that time (1948-2007), there would
be hundreds and eventually thousands of district-court-level
and appeal-level cases which have considered the issue and
argument.  Such cases could, if they exist, easily be found
with modern computer-based legal research tools:  Just do a
computer text search for "H.R. 3190", for example, or (public
law) "80-772", in the text of the opinions.

Even if Petitioner Bell's instant claim (invalidity of
18 U.S.C. recodification) was merely arguable (but ultimately
wrong) then the government should easily cite numerous cases
in which this same argument was made, considered, and rejected
with credible explanations.  (Weak, even "frivolous" arguments
are usually attempted by many people in many district courts
and in all appeal circuits.)  Remarkably, a thorough search of
published federal appeals and district court cases does not
reveal ANY attack on the validity of the Congressional passage
of 80-772 until 2006, when a few district court cases
appeared.

If the Respondent asserts that Petitioner Bell or the
defendants should have discovered these facts (concerning H.R.
3190/P.L. 80-772) with the exercise of "due diligence",

Respondent is obligated to show legal precedent which, at least, demonstrates that trained attorneys have found this error with their better training, greater experience, and far longer access to (substantially superior) computerized research tools. If the government cannot show that, this court must rule that a pro-se imprisoned non-lawyer (such as Petitioner Bell and most defendants) couldn't reasonably be expected to find this error either, and thus 28 U.S.C. 2255(4) applies: For pro-per prisoners, "due diligence" was not enough to find this error. There is no time bar to a 2255 filing until and including now.

As was held in Locascio v. U.S., 395 F.3d 51, 55 (2nd Cir. 2005);

"28 U.S.C. 2255 subsection (4) 'does not require the maximum feasible diligence, only 'due,' or reasonable diligence' Wims v. U.S., 225 F.3d 190, n.4, (2nd Cir. 2000)."

(end quote from Locascio.)

Wims, supra, at 190:

"Section 2255(4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run. Rather, it resets the limitation's period's beginning date, moving it from the time when the conviction became final, see 2255(1), to the later date on which the particular claim accrued. See Smith [v. McGinniss], 208 F.3d at 15 (2nd Cir. 2000). (distinguishing tolling provisions from those that restart the limitations period.)" (end quote from Wims v. U.S.)

And from Wims at note 4:

"The statute [2255(4)] does not require the maximum feasible diligence, only "due", or reasonable, diligence.   Cf. Armstrong v. McAlpin, 699 F.2d 79, 88-89 (2nd Cir. 1983) (requiring "reasonable" or "ordinary" diligence in the discovery of fraud for statute of limitation purposes."

CONCLUSION

Petitioner Bell requests that this court:

1.      Appoint an attorney for each Defendant, under 18 U.S.C. 3006A.

2.      Take judicial notice of the facts alleged herein, including cited pages from the Congressional Record.

3.      Declare that H.R. 3190 was not legally passed in 1948, and P.L. 80-772 was not legally enacted.

4.      Declare that purported statutes in 18 U.S.C. including 3231 were not legally enacted, and are null and void.

5.      Declare that the trial and appeal courts did not have criminal jurisdiction over any crime in Titles 8, 18, 21, 26, etc, at the time of the alleged crimes, at the times of indictment, or at the times of trial, because of the non-existence of 18 U.S.C. 3231, and thus there was no federal court jurisdiction over these crimes.

6.      Vacate Defendants' sentences and convictions and order the Bureau of Prisons to free defendants and erase their criminal records.

7.      Order the Federal Government to return all money seized (directly or indirectly) from each defendant, with interest.

Signed, _____ Dated, 11/20/07



Bell 26906-02
US Penitentiary
PoBox 2450
Tucson AZ 85734

TUCSON AZ
FEB 6
2008

Legal Mail/Special



Chief District Judge Vaughn R. Walker
Northern District of California
450 Golden Gate Ave, 16th Floor
PoBox 36060
San Francisco CA 94102